## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NYDIA AKINS, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) **Case No.:** |
| v. | ) |
| | ) **COMPLAINT FOR** |
| | ) **VIOLATIONS OF THE FAIR** |
| MIDLAND FUNDING LLC, a | ) **DEBT COLLECTION** |
| Delaware Limited Liability Company; | ) **PRACTICES ACT ("FDCPA")** |
| MIDLAND CREDIT | ) **AND GEORGIA'S FAIR** |
| MANAGEMENT INC, a Kansas | ) **BUSINESS PRACTICES ACT** |
| Corporation; and ENCORE | ) **("FBPA")** |
| CAPITAL GROUP INC, a Delaware | ) |
| Corporation, | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA") AND GEORGIA'S FAIR BUSINESS PRACTICES ACT ("FBPA")

COMES NOW Nydia Akins, Plaintiff, and states the following complaint for violations of the Fair Debt Collection Practices Act and Georgia's Fair Business Practices Act against MIDLAND FUNDING LLC, MIDLAND CREDIT MANAGEMENT INC, and ENCORE CAPITAL GROUP INC:

## Introduction

1.

Plaintiff Nydia Akins, through her counsel, brings this action to challenge the acts of Defendants regarding their attempts to unlawfully, misleadingly, and abusively attempt to collect a debt allegedly owed by Plaintiff, and this conduct caused Plaintiff damages.

2.

While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

3.

Plaintiff believes that any and all violations by Defendants as alleged in this Complaint were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## Jurisdiction and Venue

4.

This action arises out of Defendants' illegal and improper efforts to collect a consumer debt, and includes multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (the "FDCPA") and Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*

("FBPA"), and Plaintiff's claims under these statutes are so related that they form the same case or controversy.

5.

Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331 & 1337, as well as 28 U.S.C. § 1367 (Supplemental Jurisdiction).

6.

This Court has personal jurisdiction over the Defendants for the purposes of this action because Defendants transact business in the State of Georgia, the committed acts that form the basis for this suit occurred within the State of Georgia, and multiple Defendants have registered agents within the State of Georgia.

7.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action as alleged in this complaint occurred in this District, targeted Plaintiff who is a resident of this District, and multiple Defendants' registered agents in Georgia are located within this District.

**PARTIES**

8.

Plaintiff Nydia Akins is a natural person who is a resident of Clayton County, Georgia.

9.

MIDLAND FUNDING LLC ("MIDLAND") is a Limited Liability Company organized under the laws of the State of Delaware and does business within the State of Georgia, particularly within Gwinnett County, Georgia, and Henry County, Georgia.

10.

MIDLAND FUNDING LLC has a registered agent named CORPORATION SERVICE COMPANY who has a physical address for service in Gwinnett County, Georgia, at 40 TECHNOLOGY PARKWAY SOUTHSUITE 300, NORCROSS, GA 30092 and a principal place of business at 3111 CAMINO DEL RIO NORTH, SUITE 103, SAN DIEGO, CA, 92108, USA.

11.

Defendant MIDLAND FUNDING LLC is in the business of debt collection.

12.

Defendant MIDLAND FUNDING LLC is a debt collector as it uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

13.

Defendant MIDLAND FUNDING LLC may be served through its Georgia registered agent, CORPORATION SERVICE COMPANY at 40 TECHNOLOGY PARKWAY SOUTHSUITE 300, NORCROSS, GA 30092. Defendant MIDLAND FUNDING LLC may also be served through a Member of the limited liability company or a manager of the limited liability company at its principal place of business located at 3111 CAMINO DEL RIO NORTH, SUITE 103, SAN DIEGO, CA, 92108.

14.

MIDLAND CREDIT MANAGEMENT INC ("MCM") is a Corporation organized under the laws of the State of Kansas and does business within the State of Georgia, particularly within Gwinnett County, Georgia.

15.

MIDLAND CREDIT MANAGEMENT INC has a registered agent named CORPORATION SERVICE COMPANY who has a physical address

for service in Gwinnett County, Georgia, at 40 TECHNOLOGY PARKWAY SOUTHSUITE 300, NORCROSS, GA 30092 and a principal place of business at 3111 CAMINO DEL RIO NORTH, SUITE 103, SAN DIEGO, CA, 92108, USA.

16.

Defendant MIDLAND CREDIT MANAGEMENT INC is in the business of debt collection.

17.

Defendant MIDLAND CREDIT MANAGEMENT INC is a debt collector as it uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

18.

Defendant MIDLAND CREDIT MANAGEMENT INC is a debt collector as it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

19.

Defendant MIDLAND CREDIT MANAGEMNT INC may be served through its Georgia registered agent, CORPORATION SERVICE COMPANY at 40 TECHNOLOGY PARKWAY SOUTHSUITE 300, NORCROSS, GA 30092. Defendant MIDLAND CREDIT

MANAGEMENT INC may also be served through an officer or director of the corporation at its principal place of business located at 3111 CAMINO DEL RIO NORTH, SUITE 103, SAN DIEGO, CA, 92108.

20.

ENCORE CAPITAL GROUP INC ("ENCORE") is a Corporation organized under the laws of the State of Delaware and regularly does business within the State of Georgia.

21.

ENCORE CAPITAL GROUP INC has a registered agent named CORPORATION SERVICE COMPANY who has a physical address for service in New Castle County, Delaware, at 251 LITTLE FALLS DRIVE WILMINGTON, Wilmington, DE 19808, and a principal place of business at 3111 CAMINO DEL RIO NORTH, SUITE 103, SAN DIEGO, CA, 92108, USA.

22.

Defendant ENCORE CAPITAL GROUP INC is in the business of debt collection.

7

23.

Defendant ENCORE CAPITAL GROUP INC is a debt collector as it uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

24.

Defendant ENCORE CAPITAL GROUP INC is a debt collector as it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

25.

Defendant ENCORE CAPITAL GROUP INC is a debt collector as it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another either in its own capacity or through its wholly-owned subsidiaries, MIDLAND FUNDING LLC or MIDLAND CREDIT MANAGEMENT INC.

26.

Defendant ENCORE CAPITAL GROUP INC represents itself in federal Securities and Exchange Commission filings as "an international specialty finance company that provides debt recovery solutions across a broad range of assets."

27.

Defendant ENCORE CAPITAL GROUP INC acts through its wholly-owned subsidiaries, Defendants MIDLAND FUNDING LLC and MIDLAND CREDIT MANAGEMENT INC, to collect and recover debts from debtors.

28.

As recently as December 4, 2018, Defendant ENCORE CAPITAL GROUP INC acknowledged in a federal Securities and Exchange Commission filing that it is responsible for the actions of its wholly-owned subsidiaries, Defendants MIDLAND FUNDING LLC and MIDLAND CREDIT MANAGEMENT INC, by becoming a party to a settlement with 42 states and the District of Columbia regarding its debt collection practices as performed through said subsidiaries. (https://www.sec.gov/Archives/edgar/data/1084961/000108496118000140/ex991-pressrelease.htm).

29.

Defendant ENCORE CAPITAL GROUP INC may be served through its registered agent, CORPORATION SERVICE COMPANY, who has a physical address for service in New Castle County, Delaware, at 251 LITTLE FALLS DRIVE WILMINGTON, Wilmington, DE 19808.

Defendant MIDLAND CREDIT MANAGEMENT INC may also be served through an officer or director of the corporation at its principal place of business located at 3111 CAMINO DEL RIO NORTH, SUITE 103, SAN DIEGO, CA, 92108.

30.

Defendant MIDLAND FUNDING LLC and Defendant MIDLAND CREDIT MANAGEMENT INC are wholly-owned subsidiaries of Defendant ENCORE CAPITAL GROUP INC, and all three of these defendants may be referred to from time to time in this Complaint as the "ENCORE Defendants."

**STANDING**

31.

Plaintiff has suffered an injury in fact as a result of Defendants' violations of the FDCPA.

32.

The injury caused by Defendants' FDCPA violations has affected Plaintiff in a personal and individual way.

33.

Specifically, Defendants' violations of the FDCPA have violated Plaintiff's statutory rights.

34.

Defendants' violations of the FDCPA have also caused Plaintiff to be injured in a personal and individual way by causing Plaintiff unnecessary stress and anxiety, as well as causing Plaintiff to expend resources in the form of time and money, that would not have occurred but for Defendants' violations of the FDCPA.

35.

Plaintiff's injury caused by Defendants' violations of the FDCPA are concrete and actually exist.

36.

Defendants' violations of the FDCPA have resulted in an injury-in-fact that is particularized to Plaintiff because the FDCPA creates legal rights for Plaintiff that were invaded by Defendants' violations of the FDCPA.

37.

The FDCPA statutorily creates Plaintiff's right to true and accurate information as well as a private right of action to enforce this statutorily created right to be provided true and accurate information.

38.

The FDCPA's statutorily created rights go beyond the right to just information—these rights include consumer rights to truthful and correct

information, instead of false and misleading information, as well as rights to be free from intimidation, harassment, and unfair or unconscionable methods of attempting to collect debts.

39.

Plaintiff's rights created by the FDCPA also include the right to be provided adequate and truthful information allowing Plaintiff to better be able to evaluate any claims made against the Plaintiff by a debt collector, allowing Plaintiff to more efficiently and effectively determine the best course of action in attempting to resolve any disputes or claims, and reducing the burden of independent investigation into those claims.

40.

Plaintiff's injuries caused by Defendants' violations of the FDCPA are particular and concrete in that they are legally cognizable injuries through the FDCPA, they have invaded Plaintiff's legal rights, and they have resulted in stress and anxiety as well as lost resources.

**FACTUAL BACKGROUND**

41.

Plaintiff NYDIA AKINS is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692a(3), as she is a natural person who Defendants alleged was obligated to pay a consumer debt (the "Alleged Debt").

42.

Defendants have attempted to collect an Alleged Debt that is a "debt" within the meaning of the FDCPA, 15 U.S.C. § 1692a(5), as the subject of the transactions composing the alleged debt are, according to Defendants' own documentation, for primarily personal, family, or household purposes.

43.

Specifically, Defendants have alleged that Plaintiff owes the Alleged Debt on a personal credit card.

44.

Defendants used instruments of interstate commerce in order to attempt to collect the alleged debt from Plaintiff, including the use of the United States Mail.

45.

The principal purpose of Defendants' business is the collection of debts, such as the Alleged Debt, or Defendants regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Filing A False, Misleading, and Deceptive Lawsuit*

46.

Defendants caused a lawsuit to be filed against Plaintiff in Clayton County Magistrate Court, which became MIDLAND FUNDING LLC v. NYDIA AKINS, Case No. 2018CM24043, Clayton County Magistrate Court, State of Georgia (the "State Lawsuit").

47.

The State Lawsuit was brought on a claim of "Other/Contract," which in the State Lawsuit meant a claim for breach of contract.

48.

No alleged cardmember agreement or other contract is attached to the State Lawsuit.

49.

Defendants, in the State Lawsuit, claimed Plaintiff was indebted to Defendant MIDLAND for a principal amount of $2,196.62.

50.

Defendants did not specify any amount of interest for the Alleged Debt.

51.

Attached to the State Lawsuit was an "Exhibit A" that purported to be an account statement for the Alleged Debt.

52.

This alleged account statement shows the Alleged Debt is composed of at least $379.19 in interest for the year 2017.

53.

Georgia law only allows the collection of post-judgment interest on the principal amount recovered in a judgment, not on the interest recovered in a judgment.  O.C.G.A. § 7-4-12.

54.

Nevertheless, Defendants purposefully pled the State Lawsuit to include only principal, and did not break out principal and interest, in order to try and collect more post-judgment interest than they would if they separated interest and principal.

55.

In short, Defendants knew that they would receive more post-judgment interest if they listed $2,196.62 as principal, instead of breaking the Alleged Debt into its principal and interest amounts.

56.

The account statement attached as Exhibit A to the State Lawsuit also identifies an "annual fee" even though the account was closed.

*Bringing A Lawsuit to Collect An Alleged Debt Not Owed*

57.

The State Lawsuit was brought in the name of Midland Funding LLC.

58.

The Alleged Debt was in the name of Credit One Bank, N.A.

59.

Credit One Bank, N.A., is the entity to which the account statements attached to the State Lawsuit refer as creditor for the Alleged Debt.

60.

Upon information and belief, and based on the lack of evidence in the documents attached to the State Lawsuit, Midland Funding LLC does not own the right to collect the Alleged Debt under Georgia law.

61.

Defendants attached alleged Bills of Sale of debts from and to Credit One Bank, N.A., MHC Receivables LLC, Sherman Originator III LLC, and Midland Funding LLC.

62.

The alleged Bill of Sale between Credit One Bank, N.A., is written in the past tense and refers to the debts as having already been transferred or assigned to MHC Receivables LLC, indicating that this Bill of Sale is not actually an Assignment as the assignments had allegedly already occurred.

63.

None of the alleged Bills of Sale and Assignment show that the specific Alleged Debt in this case was assigned to any entity by Credit One Bank, N.A., or by any other entity to Defendant MIDLAND.

64.

The alleged Bill of Sale and Assignment between Sherman Originator III LLC and Defendant Midland Funding LLC has a closing date of December 21, 2017, but an execution date of January 10, 2018.

*The Filing and Use of a False Affidavit*

65.

Defendants attached an Affidavit of Melissa Gums to the complaint in the State Lawsuit (the "Gums Affidavit").

66.

The Gums Affidavit does not specify whether the Alleged Debt's balance for the Alleged Debt is principal, interest, or a combination of both.

67.

The Gums Affidavit states that Defendant Midland Funding LLC was sold the Alleged Debt "on or about 2017-12-21."

68.

The Gums Affidavit does not address the difference between this alleged assignment date—12-21-2017—and the assignment date on the Bill of Sale and Assignment attached to the State Lawsuit of January 10, 2018.

69.

The Gums Affidavit states that "on or about 2017-11-21" the Alleged Debt was "sold from CREDIT ONE BANK, N.A. to MHC Receivables, LLC."

70.

The Gums Affidavit does not address why the alleged Bill of Sale between Credit One Bank, N.A., and MHC Receivables LLC that Defendants attached to the State Lawsuit is dated November 30, 2017, and not November 21, 2017.

71.

The Gums Affidavit implies that it was made by Melissa Gums, and not by any other individual or entity.

72.

The Gums Affidavit claims that Ms. Gums "reviewed the electronic records pertaining to the account maintained by MCM" prior to making the affidavit.

73.

The Gums Affidavit does not claim any documents are attached to the affidavit.

74.

Upon information and belief, Melissa Gums did not review any documents prior to executing the Gums Affidavit.

75.

Upon information and belief, the Gums Affidavit was not "made" by Melissa Gums, but was rather "made" or otherwise drafted, created, and written by an entity or individual other than Melissa Gums.

76.

Upon information and belief, Melissa Gums had no or limited ability to edit or modify the Gums Affidavit.

77.

Upon information and belief, Melissa Gums' only ability regarding the Gums Affidavit was to sign it, and she was not authorized or otherwise able to modify the affidavit.

78.

Upon information and belief, Melissa Gums did not review any account records for the Alleged Debt prior to signing the Gums Affidavit despite claiming otherwise in the Gums Affidavit.

79.

Melissa Gums is a robo-signer in the sense that she does not actually review the affidavits she is asked to sign, does not draft the affidavits she is asked to sign, and does not have the ability to change or modify the affidavits she is asked to sign, but rather signs her name so that she can move to the next affidavit in order to produce as many affidavits as possible during any given time period.

*Defendants Are Enjoined From Relying On False Affidavits In Debt Collection Practices By A Consent Order With The Consumer Financial Protection Bureau*

80.

Defendant MIDLAND, Defendant MCM, and Defendant ENCORE are enjoined by Consent Order from filing, submitted, or using false or

misleading affidavits in debt collection litigation, and Defendants creation, execution, and reliance on the false and misleading Gums Affidavit violated this injunction.

81.

Defendant MIDLAND and Defendant MCM entered into a Consent Order with the Consumer Financial Protection Bureau through their parent company, Defendant ENCORE, dated September 3rd, 2015, and filed on the CFPB's system on 09/09/2015.

82.

Said Consent Order being in the administrative proceeding *In Re Encore Capital Group Inc, Midland Funding LLC, Midland Credit Management Inc, and Asset Acceptance Capital Corp.*, File No. 2015-CFPB-0022, before the United States of America Consumer Financial Protection Bureau ("Midland Consent Order").

(Available at https://www.consumerfinance.gov/policy-compliance/enforcement/actions/encore/, with the Consent Order itself directly available at

http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf).

83.

Defendant MIDLAND and Defendant MCM do not admit or deny the findings of fact made by the Consumer Financial Protection Bureau, but they nevertheless agree to be enjoined from engaging in certain activity related to the collection of consumer debts.

84.

In the pertinent portions of paragraph 132 of the Midland Consent Order, both Defendant MIDLAND and Defendant MCM are "permanently restrained and prohibited from, in connection with the collection of a Debt:"

(a)     "Submitting any affidavit containing an inaccurate statement, including but not limited to a statement that attached documentation relates to the specific Consumer being sued when that is not the case."  (Midland Consent Order ¶ 132(b).)

(b)     "Submitting any affidavit in which the affiant represents, expressly or by implication, that any attached or unattached documents or records concerning the Debt forming the basis for the lawsuit have been reviewed by the affiant, when that is not the case." (Midland Consent Order ¶ 132(c).)

(c)     "Submitting any affidavit in which the affiant represents, expressly or by implication, that the affiant has personally reviewed the affidavit, when that is not the case." (Midland Consent Order ¶ 132(c).)

85.

Defendant MCM's employee's execution of the Gums Affidavit violates each of the above prohibitions found in the Midland Consent Order.

86.

Defendant MIDLAND's submission and reliance on the Gums Affidavit violates each of the above prohibitions found in the Midland Consent Order.

*How Defendants Use Automation And Robosigning In A Way That Results In Unfair And Unconscionable Methods Of Attempting To Collect Debts And The Generation Of False And Misleading Affidavits*

87.

Plaintiff is without specific knowledge as to the allegations detailed below, but raises these allegations based upon reasoned analysis of the documents and facts related to this case and upon information and belief gleaned from the debt collection industry as a whole.

88.

Plaintiff readily admits that these allegations require discovery into the business practices of each Defendant in this case in order to obtain admissible evidence to support or refine these allegations.

89.

Nevertheless, Plaintiff states that the following allegations as to the affidavit creation and use practices of Defendants is being made based on the best of Plaintiff's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances by her legal counsel, specifically one that is prior to the conducting of discovery.

90.

Upon information and belief, Defendants utilize a scheme of form affidavits that are automatically populated with alleged account information when preparing affidavits during the litigation of an alleged debt.

91.

In this case, and upon information and belief, the Gums Affidavit was not prepared by Melissa Gums, Defendant MCM, or its employees, but was rather prepared by the law firm representing Defendants in the State Lawsuit, and was then provided Defendant MCM's employees for execution.

92.

This alone is not unfair and unconscionable, but rather what is unfair and unconscionable is the robosigning process Defendants use to execute and deliver affidavits such as the Gums Affidavit.

93.

Upon information and belief, Defendant MCM's employees, prior to executing affidavits such as the Gums Affidavit, do not perform any meaningful review of the affidavits being executed.

94.

Upon information and belief, Defendant MCM's employees, including Melissa Gums in regards to the Gums Affidavit, do not review the account records for an account prior to executing an affidavit.

95.

Upon information and belief, the employees of Defendant MCM, such as Melissa Gums in regards to the Gums Affidavit, engage in a process of robo-signing affidavits—that is, a process of signing as many affidavits as possible within a period of time without performing review or corrections of those affidavits.

96.

Upon information and belief, Defendant MIDLAND relies upon this automated process in order to keep up with the large number of lawsuits it files within the State of Georgia and has made the conscious decision to forego meaningful review of its affidavits in order to speed the litigation process along.

97.

The process used by Defendants to create, execute, file, and utilize litigation affidavits results in errors, omissions, and falsehoods entering into the affidavits Defendants file with courts within Georgia, including the Gums Affidavit.

98.

In short, the methods used by Defendants for the creation, execution, filing, and use of affidavits in litigation are designed in a way that cause false and misleading affidavits to be submitted and filed with courts.

99.

Upon information and belief, Defendants have not developed or maintained reasonable procedures in order to prevent these errors and mistakes, and in fact have done the opposite by purposefully adopting and developing procedures design to promote quantity over quality in a way that

increases the likelihood that Defendants will create, execute, file, and use false and misleading affidavits during debt collection litigation, such as the Gums Affidavit.

*Plaintiff's Damages Suffered As A Result Of Defendants' Actions In Violation Of The FDCPA*

100.

Defendants engaged in routine, purposefully, intentional, and knowing violations of the FDCPA by seeking an improper and illegal amount in the State Lawsuit and by filing the false, misleading, and deceptive Gums Affidavit.

101.

Defendants' actions caused Plaintiff to suffer damages in the form of stress, anxiety, and emotional distress relating to Defendants' actions in violation of the FDCPA, as well as damages in the form of attorneys' fees to defend the State Lawsuit and its false, misleading, improper, and illegal claims.

## RESPONDEAT SUPERIOR

### 102.

The acts and omissions of Defendants' employees who acted as agents for Defendants as described herein, were committed within the time and space limits of their agency relationship with their respective principals, Defendants.

### 103.

The acts and omissions of Defendants' legal counsel who acted as agents for Defendants as described herein, were committed within the time and space limits of their agency relationship with their respective principals, Defendants.

### 104.

The acts and omissions of Defendant MCM, its employees who acted as agents for Defendant MIDLAND and Defendant ENCORE as described herein, were committed within the time and space limits of their agency relationship with their respective principals, Defendant MIDLAND and Defendant ENCORE.

### 105.

The acts and omissions of Defendant MIDLAND and Defendant MCM, and their employees or agents, who acted as agents for Defendant

ENCORE as described herein, were committed within the time and space limits of their agency relationship with their respective principal, Defendant ENCORE.

106.

The acts and omissions by Defendants' employees who acted as agents for Defendants were incidental to, or of the same general nature as the responsibilities these agents were authorized to perform by Defendants in collecting consumer debts.

107.

By committing these acts and omissions against Plaintiffs, Defendants' employees and agents were motivated to benefit their respective principals, Defendants.

108.

Defendants are therefore liable to Plaintiffs through the doctrine of respondeat superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by their respective employees or agents.

## FIRST CAUSE OF ACTION

### (Violations of the FDCPA by Defendants)

109.

Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110.

Based on information and belief, Defendants have violated the Fair Debt Collection Practices Act ("FDCPA").

## COUNT 1

*Defendants' FDCPA Violations In Seeking Interest As Principal*

111.

Georgia law only allows post-judgment interest to accrue on principal, not interest.  O.C.G.A. § 7-4-12(a).

112.

Defendants' State Lawsuit against Plaintiff seeks a single amount—$2,196.62 in "Principal"—from Plaintiff, but fails to break this amount down into interest and principal.

113.

Defendants' claim in the State Lawsuit includes both interest and principal, as evidenced by the documents Defendants attached to the Statement of Claim in the State Lawsuit.

114.

Defendants did not break their claimed amount into interest and principal in order to increase the potential amount they will collect in post-judgment interest by obtaining an order that includes interest as principal so they can obtain post-judgment interest on interest in violation of Georgia law.

115.

Defendants' actions are in violation of the FDCPA's prohibition against using false, deceptive, or misleading representations or means in connection with the collection of any debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

116.

Specifically, Defendants' actions violated the FDCPA, 15 U.S.C. § 1692e(2) by making a "false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a

debt."  Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2).

117.

Defendants' actions are in violation of the FDCPA's prohibition against using unfair and unconscionable means to collect a debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692f.

118.

Specifically, Defendants' actions violated the FDCPA, 15 U.S.C. § 1692f(1) by seeking to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1).

119.

Defendants' actions have caused Plaintiff anxiety and stress, emotional distress, the cost of hiring legal counsel to defend the State Lawsuit, and have resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

120.

Defendants are liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with

more particularity at a later date, plus reasonable court costs and attorneys'
fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).


## COUNT 2

*Defendants' FDCPA Violations By Preparing A False And Misleading
Affidavit*

### 121.

Defendants caused the Gums Affidavit to be filed with the court in the
State Lawsuit.

### 122.

Defendants caused the Gums Affidavit to be sent to Plaintiff in the
State Lawsuit.

### 123.

The Gums Affidavit contains multiple false, misleading, and
deceptive statements.

### 124.

Specifically, but without limitation to other false claims, the Gums
Affidavit claims that the affiant reviewed account documentation prior to
executing the affidavit, but upon information and belief this did not occur.

### 125.

Defendants' actions are in violation of the FDCPA's prohibition

against using false, deceptive, or misleading representations or means in connection with the collection of any debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

126.

Defendants' actions are in violation of the FDCPA's prohibition against using unfair and unconscionable means to collect a debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692f.

127.

Defendants' actions have caused Plaintiff anxiety and stress, emotional distress, the cost of hiring legal counsel to defend the State Lawsuit, and have resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

128.

Defendants are liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with more particularity at a later date, plus reasonable court costs and attorneys' fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

## COUNT 3

*Defendants' FDCPA Violations By Seeking To Collect Improper Fees and Costs*

129.

Defendants sought to collect through the State Lawsuit an annual fee even though the account was closed before the time period the Annual Fee claimed to cover.

130.

Defendants' actions are in violation of the FDCPA's prohibition against using false, deceptive, or misleading representations or means in connection with the collection of any debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

131.

Specifically, Defendants' actions violated the FDCPA, 15 U.S.C. § 1692e(2) by making a "false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2).

132.

Defendants' actions are in violation of the FDCPA's prohibition against using unfair and unconscionable means to collect a debt. Fair Debt Collection Practices Act, 15 U.S.C. § 1692f.

133.

Specifically, Defendants' actions violated the FDCPA, 15 U.S.C. § 1692f(1) by seeking to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1).

134.

Defendants' actions have caused Plaintiff anxiety and stress, emotional distress, the cost of hiring legal counsel to defend the State Lawsuit, and have resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

135.

Defendants are liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with more particularity at a later date, plus reasonable court costs and attorneys' fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

## COUNT 4

*Defendants' FDCPA Violations By Suing Plaintiff In The State Lawsuit
When Defendants Lacked Standing*

### 136.

Defendants brought the State Lawsuit against Plaintiff claiming to have been assigned the Alleged Debt by the original creditor.

### 137.

Upon information and belief, and based on the documents attached to the State Lawsuit by Defendants, Defendants lacked standing under Georgia law to file the lawsuit against Plaintiff.

### 138.

Defendants' actions are in violation of the FDCPA's prohibition against using false, deceptive, or misleading representations or means in connection with the collection of any debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

### 139.

Defendants' actions are in violation of the FDCPA's prohibition against using unfair and unconscionable means to collect a debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692f.

140.

Defendants' actions have caused Plaintiff anxiety and stress, emotional distress, the cost of hiring legal counsel to defend the State Lawsuit, and have resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

141.

Defendants are liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with more particularity at a later date, plus reasonable court costs and attorneys' fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

## COUNT 5

*Defendants' FDCPA Violations By Filing A False And Misleading Statement of Claim for Damages on Contract When Defendants Possessed No Contract At Filing*

142.

Defendants sued Plaintiff in the State Lawsuit on a contract claim, but attached no contract to the State Lawsuit.

143.

Upon information and belief, Defendants did not possess a copy of any contract alleged to apply to the Alleged Debt at the time the State Lawsuit was filed.

144.

Defendants' actions are in violation of the FDCPA's prohibition against using false, deceptive, or misleading representations or means in connection with the collection of any debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

145.

Defendants' actions are in violation of the FDCPA's prohibition against using unfair and unconscionable means to collect a debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692f.

146.

Defendants' actions have caused Plaintiff anxiety and stress, emotional distress, the cost of hiring legal counsel to defend the State Lawsuit, and have resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

147.

Defendants are liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with more particularity at a later date, plus reasonable court costs and attorneys' fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

COUNT 6

*Defendants' FDCPA Violations By Suing For The Incorrect Amount*

148.

Defendants sought to collect the incorrect amount for the Alleged Debt from Plaintiff.

149.

Upon information and belief, and based on the documents Defendants attached to the State Lawsuit, the Alleged Debt sought by Defendants in the State Lawsuit attempted to collect on improper interest, fees, and costs on the Alleged Debt.

150.

Defendants' actions are in violation of the FDCPA's prohibition against using false, deceptive, or misleading representations or means in connection with the collection of any debt. Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

151.

Specifically, Defendants' actions violated the FDCPA, 15 U.S.C. § 1692e(2) by making a "false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a

debt." Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2).

152.

Defendants' actions are in violation of the FDCPA's prohibition against using unfair and unconscionable means to collect a debt. Fair Debt Collection Practices Act, 15 U.S.C. § 1692f.

153.

Specifically, Defendants' actions violated the FDCPA, 15 U.S.C. § 1692f(1) by seeking to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1).

154.

Defendants' actions have caused Plaintiff anxiety and stress, emotional distress, the cost of hiring legal counsel to defend the State Lawsuit, and have resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

155.

Defendants are liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with

more particularity at a later date, plus reasonable court costs and attorneys'

fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

## SECOND CAUSE OF ACTION

### (Violations of Georgia's Fair Business Practices Act by Defendants)

<u>COUNT 7</u>
*Violations of Georgia's FBPA – Legal Remedy and Damages*

156.

Based on the foregoing, Defendants, have violated Georgia's Fair

Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 *et seq.*

157.

Defendants' actions constitute unfair or deceptive acts or practices in

the conduct of consumer transactions in trade or commerce and therefore

violate Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-

390 *et seq.*

158.

Defendants' actions violate the Fair Debt Collection Practices Act, 15

U.S.C. §§ 1692 et seq., as detailed above.

159.

Courts have recognized that violations of the Fair Debt Collection

Practices Act ("FDCPA") are also violations of Georgia's Fair Business

Practices Act, O.C.G.A. § 10-1-390 et seq.  *See 1ST Nationwide Collection Agency v. Werner*, 288 Ga. App. 457, 458-60, 654 S.E.2d 428, 430-31 (2007).

160.

Defendants' actions in violation of the FDCPA, and therefore in violation of Georgia's FBPA, were intentional in nature and part of a business model designed to collect debts based on false, misleading, deceptive, unfair, unconscionable, abusive, harassing, and oppressive collection practices.

161.

Defendant MIDLAND FUNDING LLC does not maintain a place of business and does not keep assets within the State of Georgia, and therefore the requirements of O.C.G.A. § 10-1-399(b) do not apply to Plaintiff's claims against Defendant MIDLAND FUNDING LLC in this lawsuit.

162.

Defendant MIDLAND CREDIT MANAGEMENT INC does not maintain a place of business and does not keep assets within the State of Georgia, and therefore the requirements of O.C.G.A. § 10-1-399(b) do not apply to Plaintiff's claims against Defendant MIDLAND CREDIT MANAGEMENT INC in this lawsuit.

163.

Defendant ENCORE CAPITAL GROUP INC does not maintain a place of business and does not keep assets within the State of Georgia, and therefore the requirements of O.C.G.A. § 10-1-399(b) do not apply to Plaintiff's claims against Defendant ENCORE CAPITAL GROUP INC in this lawsuit.

164.

Plaintiff seeks actual damages from Defendants for the mental and emotional distress caused by Defendants' actions in violation of the FDCPA and Georgia's FBPA, as well as other actual damages that may be shown with more particularity at a later date. O.C.G.A. § 10-1-399(a).

165.

Plaintiff seeks exemplary damages, in the form of three times actual damages, against Defendants for their intentional and purposeful actions in attempting to collect the Alleged Debt in violation of Georgia's Fair Business Practices Act.  O.C.G.A. § 10-1-399(c).

166.

Plaintiff further seeks full recovery of reasonable attorney's fees and costs for this action in accordance with O.C.G.A. § 10-1-399(d).

## FOURTH CAUSE OF ACTION
### (Punitive Damages Against Defendants)

167.

Upon information and belief, Plaintiff alleges that Defendants and their agents acted willfully and with malice, wantonness, oppression, or with that entire want of care which would raise the presumption of conscious indifference to the consequences of its actions, entitling Plaintiff to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

### COUNT 8
*Punitive Damages Under Georgia's FBPA*

168.

Plaintiff has a statutorily created right to "exemplary damages," sometimes also called punitive damages, pursuant to O.C.G.A. § 10-1-399(c) for intentional violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq.

169.

Plaintiff alleges that Defendants' continued actions are intentional in nature and requests that this Court award Plaintiff exemplary damages in the amount of three times any actual damages awarded to Plaintiff pursuant to O.C.G.A. § 10-1-399(c).

## JURY DEMAND

170.

Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff prays that this Court:

(1)    Find all Defendants liable for violations of the Fair Debt Collection Practices Act for the reasons stated in the Complaint above;

(2)    Award Plaintiff the full $1,000 statutory damages for each Defendants' FDCPA violations;

(3)    Award Plaintiff actual damages in an amount to be shown with more particularity at a later date;

(4)    Find Defendants liable for actual damages in an amount to be shown with more particularity at a later date for their violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*;

(5)    Find Defendants liable for exemplary damages in the amount of three times actual damages for their violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(c);

(6)    Award Plaintiff reasonable attorney's fees and costs in accordance with the FDCPA 15 U.S.C. § 1692k(a)(2)-(3);

(7)    Award Plaintiff reasonable attorney's fees and costs in accordance with the Georgia's FBPA, O.C.G.A. § 10-1-399(d), for Defendants' violations of Georgia's Fair Business Practices Act;

(8)    Award Plaintiff the reasonable costs of this action;

(9)     Award Plaintiff other expenses of litigation;

(10)    Grant Plaintiff such other and additional relief as the Court deems just and equitable.


Respectfully submitted this <u>12 January 2019</u>.

<u>/s/ John William Nelson</u>
John William Nelson
State Bar No. 920108

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.    404.348.4462
Fax.   404.549.6765

<u>/s/  Clifford Carlson</u>
Clifford Carlson
Georgia Bar No. 227503

Cliff Carlson Law, P.C.
1114-C1 Highway 96 #347
Kathleen, Georgia 31047
Tel. 478-254-1018
cc@cliffcarlsonlaw.com

**DANIELS LAW LLC**

<u>/s/Ronald Edward Daniels</u>
RONALD EDWARD DANIELS
Georgia Bar No.: 540854

P.O. BOX 1834
Perry, GA 31069
478.227.7331 (t)
478.352.0173 (f)
ron@dlawllc.com
rondanielslaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF COMPLIANCE

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5.1(B).  The foregoing COMPLAINT was prepared on a computer, using Times New Roman 14-point font.

**DATED:**     12 January 2019

/s/ John William Nelson
John William Nelson
State Bar No. 920108

*Attorney for Plaintiff*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.    404.348.4462
Fax.   404.549.6765